## RICHARDS et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.. April 5, 1920.)

No. 3381.

1. **Conspiracy ⊚⇒43(6)—Requirements of indictment for conspiring to make interstate shipment of liquors without label stated.**

In an indictment for conspiracy to ship liquor from California into Washington, in violation of Criminal Code, § 240 (Comp. St. § 10410), making it an offense to ship any package containing liquor from one state into another, "unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein," it is not necessary to allege that the state of Washington was dry territory.

2. **Conspiracy ⊚⇒47—Evidence held to sustain conviction of conspiracy to ship whisky without labeling packages.**

Evidence *held* to sustain a conviction for conspiracy to ship whisky from one state into another without the packages being labeled to show the consignee, contents, and quantity, in violation of · Criminal Code, § 240 (Comp. St. § 10410).

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Criminal · prosecution by the United States against Bruce Richards and August Oess. Judgment of conviction, and defendants bring error. Affirmed.

Bates & Peterson, of Tacoma, Wash., Geo. Dysart, of Centralia, Wash., and John T. Welsh, of South Bend, Wash., for plaintiffs in error.

Robert C. Saunders, U. S. Atty., of Seattle, Wash., and F. R. Conway, Asst. U. S. Atty., of Tacoma, Wash.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The plaintiffs in error were charged, by the indictment under which they were convicted and sentenced, with having, on the 7th day of February, 1919, at a certain designated place within the jurisdiction of the court below, entered into a conspiracy with W. F. Toles, J. P. Symons, Joe Lucas, and J. H. Boomer, and with other persons to the grand jurors unknown, to knowingly and unlawfully ship and cause to be shipped from the state of California into the state of Washington certain packages, the number and more particular description of which were to the jurors unknown, of whisky, "without such packages being so labeled on the outside covers thereof as to plainly show the name of the consignee thereof, the nature of the contents thereof, or the quantity contained therein," in pursuance of which conspiracy and to effect the object thereof the said Toles gave and delivered to said Lucas $40, the said Symons $40, the said Richards $250, and the said Oess $400, contrary to the provisions of section 240 of the Criminal Code of the United States

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(Comp. St. § 10410). That section provides, among other things, as follows:

"Whoever shall knowingly ship or cause to be shipped, from one state, territory, or district of the United States, * * * into any other state, territory, or district of the United States, * * * any package of or package containing any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein," shall be punished in a prescribed way.

The case shows that Lucas was the one of the alleged conspirators selected to go to California and there purchase and ship into the state of Washington the alleged prohibited whisky, and it was to him that the money for that purpose was delivered by his alleged coconspirators, and that he was the one who did purchase in and ship from the state of California into the state of Washington the prohibited liquor.

The shipment so prohibited by the federal statute was also prohibited by a statute of the state of Washington providing, among other things, that any person desiring to ship or transport a certain prescribed quantity of any intoxicating liquor into any county of that state should appear before the county auditor and make a sworn statement showing among other things his name, that he is over 21 years of age, and the name and address of the person, firm, or corporation from whom the shipment is to be made, upon which statement the auditor is authorized to issue a permit to such applicant to ship or transport such limited quantity of liquor. Such permit the state statute requires to be attached to and plainly affixed in a conspicuous place to the package or parcel containing the liquor, and when so affixed—

"shall authorize any railroad company, express company, transportation company, common carrier, or any person, firm or corporation operating any boat, launch or vehicle for the transportation of goods, wares and merchandise within the state of Washington, to transport, ship or carry not to exceed one-half gallon of intoxicating liquor other than beer, or twelve quarts or twenty-four pints of beer."

And it further declares that—

"Any person so transporting such intoxicating liquor shall, before the delivery of such package or parcel of intoxicating liquor, cancel said permit and so deface the same that it cannot be used again." Section 6262—15, Remington's Code 1915.

Section 6262—18 of the same state statute makes it unlawful for any carrier to bring any liquor into the state except such as is expressly permitted by the statute, and section 6262—20 prohibits all carriers from making any such transportation within the state unless the package or parcel is plainly marked with the words:

"This Package Contains Intoxicating Liquor."

[1] To the objection made for the plaintiffs in error that the indictment "does not allege that the state of Washington was dry territory at the time of the alleged conspiracy, nor at any other time," it is a sufficient answer to say that the law presumes that all of the

alleged conspirators had knowledge of the prohibitory statutes referred to.

The contention that there was a variance between the indictment and the proof seems to be based upon the notion that it was necessary for the government to prove that the liquor was shipped from California into the state of Washington to a fictitious consignee, or under a false label, which is manifestly not so; the crime denounced by the statute, upon which the indictment is based, being the shipment of such liquor from one state into another—

"unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein."

Evidence was introduced on the trial going to show that Lucas shipped the whisky in question from California into the state of Washington concealed in a certain pipe organ, and not in any package labeled as required by the statute.

[2] In response to the claim that there was no proof of the alleged conspiracy, it is enough to make a brief excerpt from the testimony of the witness Lucas, as to whom, as well as the defendant Boomer, the indictment was dismissed. Lucas testified, among other things, as follows:

"I live in Centralia; am engaged in theatrical business there, for the past 6 years. I know the defendants and one J. H. Boomer and Jack Platt. I contemplated, about February 7th last, a trip from Centralia to San Francisco, and about 3 weeks before I left I had a talk with August Oess, one of the defendants, in regard to it. He asked me if I would bring him back some whisky, and I said, 'Yes.' We had several conversations along the same line. These conversations with Oess always referred to when I was going to California. I also had a conversation on the same subject with the defendant Bruce Richards, about the same time. He asked me if I was going to Frisco, and would I bring him back some whisky, and I told him, 'Yes.' I had several subsequent conversations with him. I went to San Francisco on February 8th this year, and about 2 weeks before I left, Mr. Richards gave me $200 at one time and $40 at another time, in cash. I asked him what kind of whisky he wanted, and he said he preferred bottled in bond in quart bottles. I also had a conversation with the defendant Toles, and one with Boomer, and one with Mr. Symons, about bringing back whisky for them. Toles gave me $40, and Symons $50, to pay for whisky to bring back for them. I told Symons that I was going to bring back some whisky to Oess and Richards, and told Oess that I was going to bring Symons $50 worth of whisky. A few days before I went away I had a talk with Oess and Richards, and we discussed about buying whisky and bringing it into Centralia, and Oess suggested that he drive his truck along the prairie, and unload the booze on the prairie into his truck, and Richards says: 'That's all right for me.' Oess paid me the money for the whisky about 12 days before I went to Frisco; he gave me $400 in bills. Before I went I bought 1,000 dry cell batteries, or covers, and I shipped them to San Francisco. I bought these a long time ago. At that time, had no intention of ever sending whisky in them; that occurred to me afterwards. I shipped them down to San Francisco about 6 or 7 days before I went. They were shipped there to bring back whisky in. There had to be some work done on them, and Jack Platt and myself did it in Fillmore street, San Francisco. (Bottle handed witness, who removed the cork and smelled of it, and said it was whisky in the bottle, and that he recognized it as one of the same kind of contraptions that they fixed up in San Francisco. Thereupon said dry cell case and the bottle containing the whisky were introduced and received in evidence and marked as Plaintiff's Exhibit 1.) I fixed 1,000 of the little dry battery cases the same as this one is fixed. There-

was whisky in each one. I got the whisky in San Francisco. I got the money to buy it from my friends, Richards, Oess, Toles, Symons and Boomer. Jack Platt helped me fill these bottles. He did most of it. After they were filled, they were filled in regular battery packing cases, and made ready for shipment, and then I left San Francisco."

We find nothing in any of the points justifying a reversal of the judgment. It is accordingly affirmed.